UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ASHLEY MURRAY,**

      **Plaintiff,**

  v.                                 **Civil Action 2:21-cv-2078**
                                        **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

      **Defendant.**

## OPINION AND ORDER

Plaintiff, Ashley Murray ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability Income Benefits and Supplemental Security Income Benefits.  This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 14), Plaintiff's Reply (ECF No. 15), and the administrative record (ECF No. 12).  For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED,** and the Commissioner's decision is **AFFIRMED**.

       **I.**       **BACKGROUND**

Plaintiff filed an application for Title II Disability Income Benefits on January 22, 2018, and an application for Title XVI Supplemental Security Income Benefits on October 17, 2018, alleging that she had been disabled since August 10, 2013.  (R. 188–200.)  On July 31, 2020, following administrative denials of Plaintiff's application initially and on reconsideration, Administrative Law Judge Noceeba Southern (the "ALJ") held a hearing, at which Plaintiff,

represented by counsel, appeared and testified. (R. 34–57.) A vocational expert ("VE") also appeared and testified at the hearing. (*Id.*) On August 10, 2020, the ALJ issued a decision denying benefits. (R. 15–27.) On March 22, 2021, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. 1–3.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

Plaintiff sets forth two contentions of error: (1) the ALJ erred in her consideration of the opinion of Dr. Carroll, plaintiff's treating psychiatrist, and (2) the ALJ erred in her consideration of the opinion Dr. Johnson, consultative examiner. (Pl.'s Statement of Errors 7–14, ECF No. 13.)

## II.   THE ALJ'S DECISION

The ALJ issued her decision on August 13, 2020, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 15–27.) At step one of the sequential

evaluation process,[1] the ALJ found that Plaintiff had not engaged in periods of substantial gainful activity since August 10, 2013, the alleged onset date of disability. (*Id.* at 18.) At step two, the ALJ found that Plaintiff has the following severe impairments: major depressive disorder, posttraumatic stress disorder (PTSD), and anxiety disorder. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix. (R. 18–20.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work at all exertional levels with the following additional limitations: simple routine tasks with no fast pace or

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

3

strict production quotas. She can tolerate a position with occasional changes and occasional decision-making to provide for low stress. She can tolerate no more than occasional but superficial interaction with coworkers and supervisors, superficial being that which is beyond the performance of job duties and job functions, for a specific purpose, and a short duration, but should avoid interaction with the public, and no over-the shoulder supervision and no tandem work. She would be off task up to 30 minutes spread throughout the course of day for three to four minutes at a time.

(R. 20.) At step five of the sequential process, the ALJ, relying on the VE's testimony, found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as order picker, hand packager, or packing machine tender. (*Id.* at 26.) The ALJ therefore concluded that Plaintiff has not been under a disability since August 10, 2013. (*Id.*)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

4

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

As set forth above, Plaintiff raises two issues in her Statement of Errors: (1) the ALJ erred in her consideration of the opinion of Dr. Carroll, plaintiff's treating psychiatrist, and (2) the ALJ erred in her consideration of the opinion Dr. Johnson, consultative examiner.  (ECF No. 13.)  The undersigned considers each contention of error in turn.

**A.  Standards Governing Consideration of Medical Opinions**

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012).  A claimant's RFC assessment must be based on all the relevant evidence in a his or her case file.  *Id*.  The governing regulations[3] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.  20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)–(5).  When evaluating medical opinions, an ALJ is not required to "defer or give any specific evidentiary weight, including

---

[3] Plaintiff's application was filed after March 27, 2017.  Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed.  *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017).

5

controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." §§ 404.1520c(b)(3); 416.920c(b)(3).

**B.      The ALJ did not err in considering the opinion of Dr. Carroll, Plaintiff's treating psychiatrist.**

Plaintiff argues that the ALJ made many errors in considering the opinion of Brendan Carroll, M.D., Plaintiff's treating psychiatrist. Specifically, Plaintiff contends that the ALJ failed to discuss the opinion's supportability; that the ALJ erroneously concluded the opinion was inconsistent with the remainder of the record; and that the ALJ erred in characterizing Plaintiff's treatment as "conservative" and finding "no evidence of decompensation even in the absence of treatment." (Pl.'s Statement of Errors 8–12.)

Dr. Carroll completed a Mental Impairment Questionnaire on May 20, 2020. (R. 435–37.) The ALJ provided the following discussion of Dr. Carroll's opinions, finding them unpersuasive:

> Dr. Carroll opined that the claimant was markedly to extremely limited in most areas of mental functioning, would be off-task 20% or more during the workday and absent three times per month (Exhibits 9F, 12F).  The undersigned finds the opinion of Dr. Carroll unpersuasive because it is inconsistent with and not supported by evidence as a whole, including Dr. Carroll's own treatment notes, which note some improvement with treatment and document only anxiety on mental status exams with otherwise normal findings (*see* Exhibits 7F, 10F).  It is also inconsistent with treatment notes through the claimant's primary care provider, which consistently fail to document this degree of limitation (*see* Exhibits 2F, 6F).  It is not consistent with other mental status examinations, such as the January 2019 assessment (Exhibit 3F) or Dr. Johnson's assessment (Exhibit 4F), which support some degree of limitation but not marked or extreme limits.  This degree of limitation is inconsistent with the claimant's treatment history and treatment regimen generally, which has been routine and conservative in nature and with no evidence of decompensation even in the absence of treatment.

(R. 24–25.)

The undersigned finds no error with the ALJ's consideration of Dr. Carroll's opinions. The ALJ appropriately explained that Dr. Carroll's opinions are unsupported by Dr. Carroll's own treatment notes and are inconsistent with other record evidence. The ALJ's decision to not include Dr. Carroll's more extreme mental limitations in Plaintiff's RFC was therefore supported by substantial evidence.

Plaintiff's arguments to the contrary are without merit.  First, as to supportability: the ALJ clearly states that Dr. Carroll's opinions are not supported by his own treatment notes, which the ALJ reviewed elsewhere in the decision.  (R. 19, 23.)  *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (recognizing that the ALJ's decision should be read as a whole).  Namely, mental status examinations at Dr. Carroll's practice document anxious and depressed mood with panic attacks, but Plaintiff demonstrated clear and logical speech, appropriate grooming and hygiene, no abnormal thought content, and no apparent

7

cognitive deficits; Plaintiff also reported improvement in sleep and panic attacks with medication. (*Id.*, citing R. 368–418.) The ALJ reasonably concluded that these findings do not support Dr. Carroll's extreme limitations. Nor does Dr. Carroll support his opined limitations in the Mental Impairment Questionnaire itself; instead, he merely checks boxes to indicate Plaintiff's symptoms, diagnosis, and limitations. (R. 435–37.) *See Pettigrew v. Berryhill*, No. 1:17-cv-1118, 2018 WL 3104229, *13 (N.D. Ohio June 4, 2018) ("Numerous decisions have found that the use of checklist or check-the-box forms that contain little to no accompanying explanation for the assessed limitations—even when utilized by a treating physician or acceptable medical source—are unsupported opinions . . . ." (citing *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016) ("Dr. Chapman's checklist opinion did not provide an explanation for his findings; therefore, the ALJ properly discounted it on those grounds."); *Smith v. Astrue*, 359 F. App'x 313, 316 (3d Cir. 2009) ("[C]hecklist forms . . . which require only that the completing physician check a box or fill in a blank, rather than provide a substantive basis for the conclusions stated, are considered weak evidence at best in the context of a disability analysis.") (internal quotation marks and citation omitted). Thus, although the ALJ may not have used the term "supportability," the ALJ's discussion satisfied the requirements of §§ 404.1520c and 416.920c as to the supportability of Dr. Carroll's opined limitations.

   Similarly, the ALJ adequately explained that Dr. Carroll's opinions were inconsistent with Plaintiff's primary care provider's treatment notes, which document largely normal psychiatric findings, with normal mood, behavior, and judgment despite reported depression and anxiety symptoms. (R. 19, 22–23, citing R. 272–306, 344–367.) Dr. Carroll's opinions were also inconsistent with other mental status examinations of record, which noted anxious and depressed mood, and some degree of impairment in carrying out instructions, maintaining pace

and persistence, interacting with supervisors, and responding to workplace pressures, but not the marked or extreme limitations opined by Dr. Carroll. (R. 19, 23–24, citing R. 307–32.) This discussion satisfied the requirements of §§ 404.1520c and 416.920c as to the consistency of Dr. Carroll's opined limitations, and the ALJ's determination that Dr. Carroll's opinion was inconsistent with the remainder of the record is supported by substantial evidence.

Next, Plaintiff objects to the ALJ's characterization of Plaintiff's treatment as "conservative" as a reason to discount Dr. Carroll's opinions. The ALJ explained that Plaintiff demonstrated improvement with medication and underwent long gaps in seeking mental health treatment.[4] The undersigned finds no error here. *See Richendollar v. Colvin*, No. 1:13-cv-495, 2014 WL 4910477, at *5 (S.D. Ohio Aug. 7, 2014) ("A claimant's failure to follow treatment can indicate that he is not as disabled as alleged.") (citing *Mullen v. Bowen*, 800 F.2d 535, 547 (6th Cir. 1986)); *Tate v. Comm'r of Soc. Sec'y*, 467 F. App'x 431, 433 (6th Cir. 2012) (holding that substantial evidence supported ALJ's weighing of treating physician's opinion where there were substantial gaps in treatment); *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (concluding that ALJ reasonably discounted a doctor's opined limitations where, among other things, the claimant was receiving conservative treatment).

Finally, Plaintiff takes issue with the ALJ's conclusion that there is "no evidence of decompensation even in the absence of treatment." Plaintiff is correct that this statement is not strictly true, as the ALJ also acknowledged that Plaintiff experienced an increase in symptoms when Plaintiff stopped taking her medications while pregnant. (R. 22.) However, the

---

[4] Plaintiff maintains that gaps in seeking treatment were due to her being on a waiting list for a trauma specialist; however, the ALJ pointed out that Plaintiff's primary care provider gave Plaintiff a list of other psychiatrists with whom she might be able to establish care sooner, but Plaintiff did not pursue treatment with these other psychiatrists. (R. 23.)

undersigned finds any error in this statement to be harmless, because the ALJ's other reasons for discounting Dr. Carroll's opinion are supported by substantial evidence, as discussed above. *See Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 520 (6th Cir. 2011) (an error is harmless "if remanding the matter to the agency 'would be an idle and useless formality' because 'there is [no] reason to believe that [it] might lead to a different result.'" (quoting *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x. 171, 173 (6th Cir. 2004)).

In sum, the Court concludes that the ALJ's discussion of the supportability and consistency factors satisfied the articulation requirements of §§ 404.1520c and 416.920c and that the ALJ's supportability and consistency analysis was supported by substantial evidence. Although Plaintiff cites other record evidence that may have supported a more limited RFC, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

C. **The ALJ did not err in considering the opinion of Dr. Johnson, consultative examiner.**

Plaintiff contends the ALJ made many similar errors in evaluating the opinion of Gregory Johnson, Ph.D., consultative examiner. Namely, Plaintiff contends that the ALJ failed to discuss the opinion's supportability; that the ALJ erred in characterizing Plaintiff's treatment as "conservative"; and that the ALJ purports to credit Dr. Johnson's opined limitations, but then fails to meaningfully explain the degree to which she credited or rejected them. (Pl.'s Statement of Errors 12–14, ECF No. 13.)

Dr. Johnson completed a Disability Assessment Report on February 4, 2019. (R. 322–32.) The ALJ provided the following discussion of Dr. Johnson's opinions, finding them largely persuasive:

10

> The claimant underwent a psychological consultative examination in February 2019 performed by Dr. Johnson. During the exam, the claimant endorsed and evidenced symptoms and experiences consistent with PTSD with panic and major depressive disorder, severe. The claimant reported avoiding interpersonal engagement, which caused panic, and difficulty managing frustrations. She reported racing thoughts and distractibility. She evidence[d] poor impulse control and attended to ambient noises during the interview. She endorsed hypervigilance and exaggerated startle response. She appeared depressed with restricted affect. She was tearful and tense. However, the claimant also appeared appropriately groomed with good hygiene. She had open and upright posture with good eye contact. Her speech was normal. She was cooperative, logical, and coherent. She did not endorse or evidence manic symptoms, pressured speech, irritability, excessive sleeplessness, engaging in high-risk behaviors, or similar symptoms. The claimant's cognitive functioning suggested low average intellectual ability and difficulties in memory, attention, and concentration. She performed poorly on complex math tasks. She endorsed disdain for perceived authority, reported quitting or being terminated from jobs due to social dysfunction. Dr. Johnson opined that the claimant would have somewhat elevated risk for dysfunction in carrying out instructions, maintaining pace and persistence, inappropriate responses to interactions and supervision, and inappropriate responses to workplace pressure. Dr. Johnson noted the specific considerations and findings that would affect the relevant areas based on the claimant's self-report and the exam but did not offer a specific function-by-function analysis of what the claimant could do despite impairments (Exhibit 4F). The undersigned finds Dr. Johnson's opinion persuasive to the extent that it supports limitation in each of the areas of mental functioning. To this extent, the undersigned includes specific limitations to accommodate the claimant's deficits in cognition, social functioning, and stress tolerance. This is generally consistent with and supported by the evidence as a whole, including counseling notes, primary care follow-up notes, and psychiatric assessments. However, the claimant's performance on mental status exam as well as the claimant's alleged symptoms and limitations are not entirely consistent with prior treatment records, which do not document this degree of limitation nor symptoms to the extent alleged during the consultative examination. Subsequent notes document similar alleged symptoms and limitations but evidence as a whole suggest improvement with appropriate treatment and medication. After the consultative examination and a one-time mental assessment in January 2019, the claimant did not seek mental health treatment until August. Further, the claimant has received routine, conservative management for allegedly debilitating symptoms but has not sought emergency room or crisis stabilization nor participate in a more intensive program. While this was reportedly due to childcare concerns, it does not appear that the claimant decompensated despite lack of consistent or aggressive treatment. The lack of such treatment is not entirely consistent with total disability. Rather, the undersigned has considered this assessment and examination in light of the totality of evidence and the above residual functional capacity adequately addresses these impairments.

(R. 23–24.)

The undersigned finds no error with the ALJ's consideration of Dr. Johnson's opinions. The ALJ explained that Dr. Johnson noted that Plaintiff's mental health impairments would affect her ability to work, but did not provide a function-by-function analysis of what Plaintiff could do despite her impairments. (*See* R. 330–31, stating only that Plaintiff is "at elevated risk for dysfunctions" in several areas.) As the remainder of the record also supports limitations in carrying out instructions, maintaining pace and persistence, inappropriate responses to interactions and supervision, and inappropriate responses to workplace pressure (as reflected in the ALJ's RFC), the ALJ found Dr. Johnson's opinion persuasive. The ALJ's consideration of Dr. Johnson's opinion was therefore supported by substantial evidence.

Plaintiff's contention that the ALJ failed to articulate her analysis of the supportability of Dr. Johnson's opinion is unavailing. Because Dr. Johnson was a one-time examiner of Plaintiff, his opinions could only be supported by data obtained during the February 4, 2019 evaluation. Dr. Johnson's 11-page Disability Assessment Report outlines his own observations, clinical interview, and mental status evaluation of Plaintiff on February 4, 2019, and the ALJ thoroughly discusses these findings which support the areas of "elevated risk of dysfunctions" arrived at by Dr. Johnson. Thus, although the ALJ may not have used the term "supportability," the ALJ's discussion satisfied the requirements of §§ 404.1520c and 416.920c as to the supportability of Dr. Johnson's mental limitations.

Further, although Plaintiff asserts that "the ALJ errs . . . failing to . . . meaningfully explaining the degree to which [s]he was crediting and/or rejecting" Dr. Johnson's opined limitations (Pl.'s Statement of Errors 14, ECF No. 13), Dr. Johnson did not provide any definitive limitations for the ALJ to credit or reject. As noted by the ALJ, Dr. Johnson stated only that Plaintiff is "at elevated risk for dysfunctions" in carrying out instructions, maintaining

pace and persistence, inappropriate responses to interactions and supervision, and inappropriate responses to workplace pressure, without providing a function-by-function analysis of what Plaintiff could still do despite her impairments. (R. 24.) *See Mosley v. Berryhill*, No. 1:13-0055, 2017 WL 1153896, at *10 (M.D. Tenn. Mar. 28, 2017) (an assessment of "difficulty" with an activity "does not constitute a definitive functional limitation that the ALJ was required to incorporate into the RFC"); *Graham v. Comm'r Soc. Sec.*, No. 1:18-CV-1939, 2019 WL 4451366, at *5 (N.D. Ohio Sept. 17, 2019) (finding no violation of SSR 96-8p where the ALJ failed to explain why he did not adopt specific limitations because, *inter alia*, the at-issue limitations "were not definitive as they indicated that Plaintiff '*may* require some repetition' as to instructions and '*may*' need assistance in making independent decisions regarding work goals"); *Slivka v. Berryhill*, No. 1:17-CV-01076, 2018 WL 3340388, at *9 (N.D. Ohio May 29, 2018), *report and recommendation adopted*, 2018 WL 3336461 (N.D. Ohio July 5, 2018) ("To treat the *possible* limitations floated by Dr. Matyi as an affirmative finding that such limitations are mandated would improperly alter the contents of the medical source's opinion.").

The ALJ further explained that Dr. Johnson's findings, though non-definitive, are consistent with the ALJ's RFC limitations, stating, "[t]he undersigned finds Dr. Johnson's opinion persuasive to the extent that it supports limitation in each of the areas of mental functioning." (R. 24.) Accordingly, the ALJ assessed limitations to simple routine tasks with no fast pace or strict production quotas; only occasional changes, decision-making, and superficial interaction with coworkers and supervisors; no interaction with the public, over-the-shoulder supervision, or tandem work; and allowances for up to 30 minutes off task spread throughout the course of day for three to four minutes at a time. (R. 20.) Thus, the ALJ sufficiently explained what portions of Dr. Johnson's opinion were credited and incorporated into the RFC.

Finally, Plaintiff's criticism of the ALJ's characterization of her treatment as "conservative" fails for the same reasons discussed above in relation to Dr. Carroll's opinion.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner of Social Security's decision.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE